**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAUL PUENTE (K53159),** | ) | |
| **Petitioner,** | ) | **Case No. 04 C 4877** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **NEDRA CHANDLER, Warden, Dixon** | ) | |
| **Correctional Center,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

On June 18, 1995, Rogelio Rodriguez was fatally shot in the now-shuttered El Saloon Tavern on South Lawndale Avenue in Chicago. Following a jury trial, petitioner Raul Puente was found guilty of first-degree murder in connection with Rodriguez's death and was sentenced to a forty-year term of imprisonment.[1] In 2004, Puente filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following protracted litigation culminating in an evidentiary hearing, the court rejected Puente's ineffective assistance of counsel claim based on the choice of a misidentification defense at trial. Although never mentioned in the parties' extensive briefs regarding that claim, Puente now asserts that he raised other claims in his 2007 brief in support of his amended habeas petition and asks the court to grant habeas relief based on those claims. The parties have submitted an agreed list of issues that are ripe for disposition. Dkt. 176. For the following reasons, Puente's request for habeas relief is denied.

### I. BACKGROUND

For the purposes of this order, familiarity with the court's November 8, 2013 order, which summarizes the facts from the state court proceedings and the federal evidentiary hearing

---

[1] According to the Illinois Department of Corrections Inmate Locator, Puente's projected parole date is August 5, 2015.

and addresses Puente's ineffective assistance of counsel claim based on the use of a misidentification theory, is assumed. *See* Dkt. 169. In a nutshell, following Puente's arrest, police claimed that Puente told Detective Perez that he fired blank rounds at the El Saloon on the night of the shooting. They also claim that Puente said that after arguing with a man at the El Saloon, he borrowed a gun, discharged it into the ceiling, fired another shot into the bar as he was being forced out into the street, and fired a third shot while in the street. These alleged statements were memorialized by the police. *See* Original Pet. Ex. G.

Retained counsel Raul Villalobos and his associate, Jesus Perez, represented Puente. They filed a motion to suppress Puente's alleged statements to the police. At the suppression hearing, Perez appeared on Puente's behalf. Puente testified, denied that he had made any incriminating statements to the police, and asserted that the police had failed to advise him of his *Miranda* rights. He also testified that the shooting was accidental. The trial court denied the motion to suppress. Following the hearing, Villalobos discussed a plea with Puente. Puente refused to give Villalobos permission to discuss a plea, and said he wanted to go to trial and testify about what had happened at the El Saloon. Puente then fired Villalobos.

After firing Villalobos, Puente hired attorney James Marcus based on a recommendation by Victor Medina, who was detained, along with Puente, at the Cook County Jail. Prior to trial, Marcus was aware that Jose Montejano (the bartender at the El Saloon) knew Puente by his first name, had told police that Puente had fired a gun inside the El Saloon on the night of the murder and left the El Saloon in a maroon car, and had identified Puente in a police photo array. Ultimately, however, Montejano was unable to make an in-court identification of Puente at trial.

Marcus was also aware that Cuahemoc Murillo, who was at the El Saloon on the night of the shooting, heard shots, saw a person outside the bar holding a gun and heard that person say he had just shot someone, and saw the person depart in a maroon car with the license plate number MGP 75. Puente met Murillo for the first time on the night of the shooting. Marcus knew that the license plate number on Puente's car was WGP 759. Prior to trial, Murillo said that Puente was one of two people in a four-person lineup who was the shooter. Murillo, too, ultimately did not make an in-court identification.

In addition, Marcus was aware that bar patron Juan Morales told police he saw Puente fire a gun at the El Saloon on the night of the murder. As with Murillo, Puente met Morales for the first time on the night of the shooting. Puente Dep. at 32. Morales selected Puente from a line-up as the shooter. At trial, Morales testified that he stopped by the El Saloon for a beer after work, people started throwing chairs, and then a man entered the bar holding a gun. According to Morales, he saw Puente in the bar with the gun in his hand, and there were approximately 15 people between him and Puente. Although Morales has cataracts and wears glasses, he was not wearing his glasses on the evening of the shooting.

Moreover, Marcus was aware that David Saragosa, who lived above the El Saloon, was acquainted with "Raul," who lived in Cicero, and had a photograph from the baptism of one of Raul's children. Puente lived in Cicero, and church records showed that the "Raul" from the baptism was Raul Puente.

During a four-day evidentiary hearing before this court, Puente testified that prior to trial, Marcus did not provide him with the State's discovery or discuss the charges, trial strategy, potential defenses, or potential penalties with him. Puente denied telling Marcus that he was not

at the El Saloon on the night of the shooting.  Puente believes that Marcus should have pursued an "accident" defense and contends he would have rejected any suggestion that he use a misidentification defense.  Marcus, on the other hand, testified that since Puente would not allow him to engage in plea negotiations and took the position that he was not at the El Saloon on the night of the shooting, he felt his only option was to proceed to trial on the first-degree murder charge with a misidentification defense.

During the evidentiary hearing, the court allowed Puente to develop his claim that Marcus' choice of a mistaken identity defense instead of an involuntary manslaughter defense violated his right to effective assistance of counsel.  The court found that Marcus provided constitutionally adequate assistance when counseling Puente about plea negotiations and proceeding to trial while contesting that Puente was at the El Saloon on the night of the murder. It then concluded that, given Puente's insistence that he was not at the El Saloon when Rodriguez was shot, Marcus' only option was to argue mistaken identity so his decision to raise that defense could not support the granting of habeas relief.

Puente's amended habeas petition raises three additional claims, each of which has numerous sub-parts:

1. Trial counsel was ineffective for failing to:

  a. move to suppress suggestive identification evidence (Memo. in Support of Amended Pet. at 48-60) – specifically:

    i. the suggestive police photo array that:

      (A) led to Puente's arrest, his self-incriminating statement to Detective Perez, and the police line-up; and

(B)     was shown to bar patron Juan Morales to assist Morales in identifying Puente in court during the trial and were admitted into evidence with no objection by trial counsel; and

ii.     the police line-up, where bartender Jose Montejeno identified Puente;

b.     challenge eight jurors who were potentially biased in favor of the State because they were either victims of crime or closely connected to law enforcement officers or victims of crime (*id.* at 60-63);

c.     investigate[2] (*id.* at 63-75) – specifically:

i.     attorney Jesus Perez (who was employed by retained, experienced counsel Raul Villalobos) did not investigate:

(A)     whether probable cause supported Puente's arrest;

(B)     why arresting officer Detective Perez did not obtain an arrest warrant;

(C)     whether Puente's incriminating statement to Detective Perez was voluntary due to alleged police coercion; and

(D)     whether Puente's waiver of his *Miranda* rights was knowing and voluntary.

Alternatively, (E) Perez investigated these areas but failed to act on the results of his investigation;

ii.     all of Puente's trial counsel (Villalobos, who was fired by Puente, his associate, Perez, and replacement retained counsel James Marcus) did not investigate "the facts regarding the State's unduly suggestive photo array and suggestive line-up evidence" (*id.* at 64);

iii.     Marcus did not investigate or develop evidence demonstrating that the shooting was "unintentional and reckless or negligent and accidental,

_____

[2] Puente also asserts that counsel may have investigated the areas that are the subject of his multi-part failure to investigate claim. According to Puente, if his lawyers in fact conducted an adequate investigation, they unreasonably failed to act based on that investigation. Several of the failure to investigate claims have companion failure to act claims. To the extent that Puente did not include separate failure to act claims for any of his failure to investigate claims, the court declines to construct them for him.

including "Puente's own potential testimony as well as that of others" (*id.* at 65);

iv.    Marcus "failed to investigate when he failed to cross-examine vision conflicted, bar patron Morales about [Morales'] description of the shooter as being a 'shadow'" (*id.* at 69);

v.    counsel (presumably Marcus) did not consider calling an expert ballistic witness to testify that the victim was not hit at close range and that the bullet that struck the victim had ricocheted. The ricochet testimony would have supported Puente's contention that the gun discharged accidentally after he was struck in the back of his legs with a barstool;[3]

vi.    Marcus did not investigate the applicable law as he:[4]

    (A)    argued mistaken identity instead of the more favorable defenses of involuntary manslaughter or second degree murder;

    (B)    asked for an instruction on involuntary manslaughter based on the argument that Puente did not intend to kill Rodriguez when an involuntary manslaughter instruction required evidence showing that Puente did not intend to kill anyone (not just Rodriguez);

    (C)    did not request a jury instruction on second degree murder; and

---

[3] The putative ballistics evidence is relevant only if Puente admitted at trial that he was at the El Saloon at the time of the shooting. As discussed in detail in the court's November 8, 2013 order, he did not do so. Puente cannot be someplace else at the time of the shooting *and* have a defense expert testify that when he discharged his gun while at the El Saloon, the trajectory of the bullet demonstrates that the gun was fired accidentally. The court will, therefore, not discuss Claim 1(c)(v) further.

[4] Two of the four failure to research claims – Claims 1(c)(vi)(B) and (D) – are discussed below. Puente also argues that counsel failed to conduct research that would have shown that counsel should have raised the defenses of involuntary manslaughter or second degree murder instead of mistaken identity (Claim 1(c)(vi)(A)). For the reasons set forth in the November 8, 2013 order, counsel made a conscious decision to pursue a mistaken identity defense due to Puente's position that he was not at the El Saloon at the time of the shooting. The use of a mistaken identity defense was not due to a failure to investigate that defense or other options. Puente's insistence that he was not at the El Saloon also means that Marcus could not request a jury instruction on second degree murder, which is applicable when a murder is negligent or accidental. This is Claim 1(c)(vi)(C). Puente cannot be somewhere else at the time of the shooting *and* simultaneously in the El Saloon negligently or accidentally discharging a gun.

(D)     did not research "the legal basis of the trial court's instruction to the jury on assessing the reliability of witness testimony" (*id.* at 71) and thus failed to object to an erroneous instruction regarding witness identification testimony;

d/e.[5]   (d) allow Puente to exercise his right to testify by "keeping him off the witness stand and not advising him of his right to testify, while (e) pursuing an unsound defense of mistaken identity" (*id.* at 86-90); and

f.      object to an improper jury instruction regarding witness identification testimony (*id.* at 90-95); and

g.      the cumulative effect of trial counsel's errors denied Puente the right to effective assistance of counsel.

2.      The trial court erred in:

a.      failing to declare a mistrial based on prosecutorial misconduct (*id.* at 96-98) based on:

i.      the prosecution's elicitation of Detective Perez's testimony that:

(A)     he had obtained Puente's photograph from police records for use in the photo array; and

(B)     he did not ask Puente if he used an alias because he already had Puente's "criminal history" (*id.* at 96); and

ii.     the prosecution's argument to the jury, as part of the State's rebuttal case, that Puente could have called witnesses of his own to testify about the shooting.  According to Puente, since he would have been the key witness regarding his version of events, this argument improperly referred to his right to remain silent; and

b.      denying Puente's motion for an involuntary manslaughter instruction because the testimony that the trial court relied on in making this decision (bar patron Morales' testimony about the shooting) was not credible or was consistent with

---

[5] The "1(d/e)" designation may be confusing at first glance.  However, Puente numbered these claims as 1(d) and (e).  In an effort to lessen the confusion caused by Puente's surfeit of claims, the court has adhered to Puente's numbering system.  It has also added sub-part numbering in an effort to untangle claims with multiple sub-parts.

Puente's statement to the police and thus showed Puente lacked the intent to commit first degree murder (*id*. at 99-104);

c.     imposing a sentence that, while within the sentencing range in effect at the time, is excessive given his personal characteristics and potential to be rehabilitated (*id*. at 104-108); and

d.     dismissing Puente's pro se state post-conviction petition in violation of 725 Ill. Comp. Stat. § 5/122-2.1, which provides that the court has ninety days to screen and dismiss petitions and after that time has passed, the petition must be docketed for further proceedings  (*id*. at 108-111); and

e.     the cumulative effect of the trial court's errors denied Puente of his right to due process and a fair trial.

3.     Appellate counsel on direct appeal was ineffective for failing to raise:

a.     the ineffectiveness of trial counsel in Puente's direct proceedings (*id*. at 111-15);

b.     Puente's excessive sentence claim (*id*.);

c.     a claim based on the denial of Puente's motion for a new trial based on the failure to suppress Puente's statement and the allegedly suggestive line-up (Statement of Issues at 3, Dkt. 176); and

d.     the cumulative effect of appellate counsel's errors denied Puente of his right to effective assistance of appellate counsel (Memo. in Support of Amended Pet. at 115).

## II. STANDARD OF REVIEW

To the extent that Puente preserved his claims so that this court may reach their merits, he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 if the challenged state court decisions are either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), Puente must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

## III. DISCUSSION

Puente's appointed counsel decided to raise a plethora of claims – at least thirty, depending on how sub-parts are counted – despite the Seventh Circuit's "repeated counsel that 'the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis.'" *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513 (7th Cir. 2011) (quoting *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011)); *see also Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) (the "kitchen sink" approach to briefing is distracting, confusing, and "consumes space that should be devoted to developing the arguments with some promise"). The deluge of claims in this case is especially challenging to address as the various claims are often contradictory, not clearly articulated, or pop up inside discussions of other claims.

In the interests of brevity, the court will assume that the reader has reviewed its November 8, 2013 opinion addressing the ineffective assistance of counsel claim based on the use of a misidentification defense. That opinion includes a detailed summary of the events

before, during, and after the shooting at the El Saloon, the suppression hearing, the pretrial proceedings, the trial, Puente's direct appeal, Puente's collateral state court proceedings, and the federal evidentiary hearing. In addition, due to the number of claims with multiple levels of subparts, to minimize confusion, the court will: (1) provide the relevant procedural posture when it discusses each claim, instead of summarizing the entire procedural posture separately; and (2) proceed through the claims in the order presented by Puente, instead of using the more efficient method of grouping them together by subject (*i.e.*, claims that are not cognizable in federal habeas corpus proceedings). With this in mind, the court turns to Puente's lengthy list of claims.

## A.      Ineffective Assistance of Trial Counsel

To receive habeas relief on an ineffective assistance of counsel claim, Puente must establish that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under *Strickland*, the court's review of counsel's performance is "highly deferential," meaning that to prevail, Puente must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Woolley v. Rednour*, 702 F.3d 411, 422-23 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). If Puente fails to satisfy the performance or prejudice prongs under *Strickland*, the court's inquiry ends. *See Strickland*, 466 U.S. at 697.

As noted below, the court has already rejected Puente's ineffective assistance of trial counsel claim based on the use of a misidentification defense on the merits. *See* Mem. Op. and Order, Nov. 8, 2013 (Dkt. 169). As detailed below, all of Puente's remaining ineffective assistance of trial counsel claims are procedurally defaulted because Puente failed to present

them through a complete round of state court review or they are barred by the independent and adequate state ground doctrine and no exceptions to procedural default are applicable.

### 1.    Failure to Move to Suppress Suggestive Identification Evidence – Claim 1(a)

Puente first takes issue with trial counsel's failure to move to suppress evidence related to an allegedly suggestive live line-up. He argues that, at the line-up, he wore a black baseball cap (like the shooter reportedly wore) and the other participants wore yellow, blue, or white baseball caps, was the only clean shaven participant (as the shooter reportedly was), was the only participant with a visible tattoo, was the shortest person by one to three inches, was the oldest person by five to nine years, was wearing dirty clothing while the other participants wore clean clothing, and was wearing black shoes while the other participants wore white tennis shoes.[6] Memo. in Support of Amended Pet. at 50. Puente also contends that a police photo array was unduly suggestive because he was Hispanic, 41 years old, 165 pounds, and was clean-shaven, while the other photographs depicted a man without a shirt, a young man with a mustache, a heavy set man with a mustache, and at least one Caucasian man. *Id*. at 50-51. On a related note, Puente argues that his trial counsel was ineffective because he did not object to the use of the photographs at trial. *Id*. at 51.

Generally, a line-up or photo array can be unnecessarily suggestive and unfairly prejudicial to a suspect if the participants do not have a similar appearance. *See Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013) (citing *United States v. Wade*, 388 U.S. 218, 232-33 (1967)). When considering whether the decision to refrain from filing a motion to suppress

---

[6] The respondent's answer reverses the factual allegations about facial hair as it states that Puente had a mustache and the other participants were clean-shaven. Answer at 26. At trial, Detective Trial Perez testified that Puente was clean-shaven. Tr. 196. The court will accept Puente's version for the purposes of his § 2254 petition.

based on a suggestive line-up or photo array constitutes ineffective assistance of counsel, the court must determine if the decision was strategic and the petitioner has shown prejudice. *Gilbert v. Merchant*, 488 F.3d 780, 789-90 (7th Cir. 2007) (line-up); *United States ex rel. Nichols v. Hardy*, No. 11 C 2059, 2011 WL 4585577, at *8 (N.D. Ill. Sept. 30, 2011) (photo array). First, however, the court must determine if Claim 1(a) – Puente's ineffective assistance claim based on trial counsel's failure to file a motion to suppress – survives the hurdle of procedural default. For the following reasons, the court concludes the claim is procedurally defaulted and that no exceptions to procedural default are available.

### a. Procedural Default – Claim 1(a)

A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Thus, the court must determine if Puente presented Claim 1(a) to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court in either his direct or state post-conviction proceedings. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means it is procedurally barred); *O'Sullivan*, 526 U.S. at 844 (failure to present claim to state's highest court means it is procedurally barred).

Puente concedes that he did not raise Claim 1(a) in his brief filed with the Illinois Appellate Court on direct appeal. Reply at 2. Thus, he did not present this claim through one complete round of direct state court review.

The court thus turns to whether Puente raised Claim 1(a) in all three levels of his state post-conviction proceedings. In a section of his pro se state post-conviction petition titled "prosecutorial misconduct," Puente blames Detective Perez for the use of evidence from the line-

up at trial and the allegedly suggestive photo array. Resp. Ex. D at 10-14. In this section, he makes a few general references to his attorney. For example, he asserts prosecutorial misconduct and then states, "The Court tries to clear this [the alleged prosecutorial misconduct] up by emphasizing that it was the 'Ineffectiveness of Counsel' for not objecting as to photo array by Det. Perez (TR. TRANS. DEC. 3, 1996, PG. E-168)[.] But the real fact the conviction was based itself on a suggestive identification as a defense." *Id*. at 11. He then lists a number of ways in which Detective Perez's actions were prejudicial and the State's conduct at trial violated his rights. *Id*. at 11-14.

To avoid procedural default, Puente must "fully and fairly" present his claims through one complete round of state-court review. *Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006). This allows the state to have "a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id*. (internal quotations omitted). To satisfy this burden, Puente must "put forward operative facts and controlling legal principles." *See id*. (quoting *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004)). The Illinois Appellate Court found that Puente had failed to include Claim 1(a) in his pro se state post-conviction petition. Resp. Ex. L at 6. This court agrees.

Even when construed broadly, Puente's pro se petition can be understood only as raising a claim based on prosecutorial misconduct, not ineffective assistance of trial counsel, because he focuses on Detective Perez and the State's actions and only mentions trial counsel in passing. A petitioner must alert the state courts that his claims are based on the United States Constitution. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim

was made." *Id*. (internal citations omitted). Puente's petition does not contain a recognizable ineffective assistance claim based on the failure to file a motion to suppress the allegedly suggestive identification testimony.

This conclusion is further supported by the fact that Puente's petition contains a section entitled "ineffectiveness of appellate counsel." *See* Resp. Ex. D at 14-15. In this section, Puente criticizes direct appeal counsel for raising a single claim (that the trial court abused its discretion when sentencing him) and argues that she should have challenged the effectiveness of trial counsel for unspecified reasons "shown all through the record." *Id*. at 14. He also contends that his direct appellate counsel misstated the facts because she did not contend that the shooting was either accidental or due to provocation.[7] While lacking in detail, Puente was able to express that he believed his direct appeal counsel was ineffective for failing to challenge trial counsel's effectiveness. This demonstrates that Puente could have articulated, in at least general terms, an understandable ineffective assistance of trial counsel claim based on the allegedly suggestive identification evidence had he intended to do so.

Moreover, in his brief supporting his § 2254 petition, Puente characterizes the "prosecutorial misconduct" section of his state post-conviction petition as a "mistaken" effort to argue that the line-up was suggestive. Memo. in Support of Amended Pet. at 53. A claim that the line-up violated Puente's constitutional rights because it was suggestive is not interchangeable with a claim that trial counsel violated Puente's Sixth Amendment right to effective assistance of counsel by failing to challenge the line-up. Claim 1(a) is thus procedurally defaulted under the one full round doctrine. *See McDowell v. Lemke*, 737 F.3d 476,

---

[7] Direct appeal counsel, instead, understandably hewed to the trial court record, which reflected Puente's then-position that he was not at the El Saloon at the time of the shooting.

482-83 (7th Cir. 2013) (habeas petitioner's claim based on an allegedly suggestive photo array was procedurally defaulted under the one full round doctrine).[8]

### b. Exceptions to Procedural Default – Claim 1(a)

There are two exceptions to procedural default that, if met, allow a federal habeas court to reach the merits of a defaulted claim. First, the "cause and prejudice" exception applies if a petitioner identifies an "objective factor external to the defense [that] impeded [his] efforts to comply with the State's procedural rule" and demonstrates actual prejudice resulting from the alleged violation of federal law. *Strickler v. Greene*, 527 U.S. 263, 282 n.24 (1999). Alternatively, a petitioner can avoid default using the "fundamental miscarriage of justice" exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Neither exception saves Claim 1(a).

### i. Cause and Prejudice – Claim 1(a)

Claim 1(a), to recap, is that trial counsel was ineffective because of his failure to file a motion to suppress purportedly suggestive identification evidence. Puente asserts that his direct appeal counsel was responsible for the decision to omit Claim 1(a) from the brief filed with the Illinois Appellate Court. According to Puente, this constitutes cause that excuses his procedural default.

---

[8] Based on the finding of default under the one full round doctrine, the court will not consider the respondent's contention that the claim is also barred under the independent and adequate state ground doctrine based on the Illinois Appellate Court's reliance on a state procedural bar arising from Puente's failure to raise Claim 1(a) in his pro se state post-conviction petition. *See* Answer at 27 (citing Resp. Ex. L at 6-7).

To use ineffective assistance of counsel as cause to excuse the default of an underlying claim (here, Claim 1(a)), Puente must have first preserved a claim of ineffective assistance of counsel as cause by presenting it as an independent claim through one complete round of state court review. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *see also Howard v. Harrington*, No. 11 C 6045, 2014 WL 51691, at *8 (N.D. Ill. Jan. 7, 2014). The court thus must determine if Puente presented such a claim to the trial court, the Illinois Appellate Court, and Illinois Supreme Court in either his direct or collateral state court proceedings. He did not.

This issue was unquestionably not raised in Puente's direct proceedings. In his pro se post-conviction petition filed with the state trial court, Puente blamed direct appeal counsel for not presenting "the 'Ineffectiveness of Trial Counsel' which is shown all through the record." Resp. Ex. D at 14. Construed broadly, Puente contended that trial counsel's use of a misidentification defense led to his conviction for first degree murder instead of less serious offenses. According to Puente, if appellate counsel had raised this issue on direct appeal, the appellate court would have granted relief and Puente's conviction would have been vacated. *See id*. at 14-15.

Puente's pro se state post-conviction petition thus contains a claim that appellate counsel was ineffective based on her failure to assert trial counsel's ineffectiveness in using a misidentification defense. However, this claim does not have any recognizable tie to a claim that appellate counsel was ineffective based on her failure to assert trial counsel's ineffectiveness in not moving to suppress evidence from the line-up and photo array. Thus, Puente defaulted his

ineffective assistance of appellate counsel as cause claim.  *See Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) ("the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to procedural default")*; United States ex rel. Boyce v. Hardy*, No. 11 C 1972, 2013 WL 5951578, at \*4 n.2 (N.D. Ill. Nov. 7, 2013) ("An unrelated ineffective assistance of counsel ground is insufficient to exhaust the present [different] ineffective assistance of counsel argument").  Accordingly, Puente has procedurally defaulted the claim that ineffectiveness of appellate counsel is cause that excuses the procedural default of his Claim 1(a).

This conclusion stands despite two recent Supreme Court cases addressing whether the lack of counsel at the trial court level of state post-conviction proceedings can serve as cause that excuses the default of underlying ineffective assistance claims.  *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, — U.S. —, 133 S. Ct. 1911 (2013).  *Martinez* and *Trevino* establish limited circumstances where a petitioner who files a pro se state post-conviction petition can use deficiencies in that petition (due to his pro se status) to establish cause that excuses the default of ineffective assistance of trial counsel claims.  *Martinez* and *Trevino* post-date Puente's extensive filings.  The court will nevertheless address them in the interests of completeness.

Under *Martinez*, cause exists to excuse a default of an ineffective assistance of trial counsel claim in a state post-conviction petition if:  "(1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-

counsel claim; and (4) state law requires that an ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino*, 133 S. Ct. at 1918 (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21).

Illinois law does not require ineffective assistance of counsel claims to be raised first in state collateral proceedings. *See Diaz v. Pfister*, No. 12 C 286, 2013 WL 4782065, at * 10 (N.D. Ill. Sept. 4, 2013); *Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652, at *21-22 (N.D. Ill. Aug. 19, 2013). Thus, *Martinez* is inapplicable. *Trevino* is also inapplicable. As this court recently explained:

> [w]ith respect to *Trevino*, "[u]nder Illinois law a petitioner can adequately develop the factual record supporting his ineffective assistance of counsel claim prior to his direct appeal by filing post-trial motions pursuant to the Illinois Supreme Court's decision in *People v. Krankel*, 102 Ill.2d 181 (Ill. 1984) (holding that a defendant is entitled to new counsel to represent him on post-trial motions alleging ineffective assistance of trial counsel)." *Butler* [*v. Hardy*, No. 11 C 4840,] 2012 WL 3643924, at *3 [(N.D. Ill. Aug. 22, 2012)]. In contrast, *Trevino* turned on Texas law, under which it is "virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim" on direct review. *Trevino*, 133 S. Ct. at 1918 (quoting *Robinson v. State*, 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000)). Because of this critical difference between Illinois and Texas law, *Trevino* does not apply to this case, as [the petitioner] had a meaningful chance to raise an ineffective assistance of trial counsel claim in his direct proceedings, had he chosen to do so. *See id.* at 1921.

*Murphy*, 2013 WL 4495652, at *22. Thus, neither *Martinez* nor *Trevino* allow Puente to avoid procedural default because he filed his state post-conviction petition without the assistance of counsel. *See generally Nash v. Hepp*, 740 F.3d 1075, 1078-79 (7th Cir. 2014) (neither *Martinez* nor *Trevino* excused a Wisconsin habeas petitioner's procedural default because Wisconsin law does not "confine[] claims of trial counsel's ineffectiveness exclusively to collateral review"). This means Puente cannot establish cause that excuses the default of Claim 1(a). The court,

therefore, will not address the prejudice prong.  *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (if no cause exists, the court's inquiry regarding cause and prejudice ends).

## ii.        Fundamental Miscarriage of Justice – Claim 1(a)

The second exception to procedural default – fundamental miscarriage of justice – applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent."  *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  In this case, Puente contends that "the record evidence shows that [he] is actually innocent of first degree murder, the crime of conviction" because he "discharged his handgun either unintentionally and recklessly or that, acting under intense passion, he discharged it negligently or accidentally, such as to justify a verdict of involuntary manslaughter or second degree murder, respectively."  Memo. in Support of Amended Pet. at 59.

For habeas purposes, there are two types of innocence: substantive and procedural.  To establish substantive innocence, a habeas petitioner must point to "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Schlup*, 513 U.S. at 324).  He must then establish "that it was more likely than not that no jury would have convicted him at trial were the new, exculpatory evidence available."  *Id*.  The Seventh Circuit recently clarified that "adequate evidence" that can satisfy the "more likely than not" standard "is documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed [the defendant] out of the city, with credit card slips, photographs, and phone logs to back up the claim."  *Id*. (internal quotation marks omitted).

Puente's "new" evidence (which was known to him at the time of trial) does not rise to this level. In Illinois, first degree murder has long required specific intent "to kill or to do great bodily harm" when performing acts that cause death. *See People v. Hopp*, 209 Ill.2d 1, 13 (Ill. 2004); *see also Morgan v. Hardy*, 662 F.3d 790, 803 (7th Cir. 2011). The jury found that the evidence presented at trial supported a guilty verdict for first degree murder.

Puente's "new" evidence places him, gun in hand, at the El Saloon when the shooting occurred (compared to his position at trial that he was *not* at the El Saloon), and definitively identifies him as the shooter. Moreover, bar patron Morales testified that his fellow patrons were throwing chairs when Rodriguez was shot. The jury was thus aware of testimony indicating that the shooting took place as part of a melee. It is theoretically possible that the result would have been different if the jury had heard Puente's view of the events that led to Rodriguez's death. The "more likely than not" standard, however, is "stringent." *House v. Bell*, 547 U.S. 518, 522 (2006). Based on this record, the court cannot find that if the "new" evidence had been presented, it is more likely than not that no jury would have found that Puente had specific intent to kill or do great bodily harm.

Actual innocence can also be "a procedural mechanism rather than a substantive claim." *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (citing *Schlup*, 513 U.S. at 315). Thus, a petitioner can claim procedural innocence based on the contention that the violation of his constitutional rights "denied him the full panoply of protections afforded to criminal defendants by the Constitution.'" *Schlup*, 513 U.S. at 314-15; *see also United States ex rel. Parker v. Hodge*, No. 04 C 5147, 2012 WL 707096, at *9 (N.D. Ill. Mar. 5, 2012). In this situation, a claim of actual innocence may serve as a "gateway through which a habeas petitioner must pass

to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

A procedural innocence claim can support the grant of federal habeas relief only if it rests on a valid constitutional claim. *Schlup*, 513 U.S. at 315; *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (a claim of procedural innocence must be "accompanied with an assertion of constitutional error at trial"). A petitioner asserting procedural innocence to excuse procedural default must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Coleman*, 628 F.3d at 319 (quoting *House*, 547 U.S. at 537 (internal quotation and citation omitted)); *see also Schlup*, 513 U.S. at 315.

Despite his position at trial that he was not at the El Saloon on the night of the shooting, Puente vigorously argues today that evidence not presented at trial – that he was in fact at the El Saloon and shot Rodriguez recklessly, negligently, or accidentally – shows he is actually innocent of the offense of first degree murder. Puente concludes that, based on this evidence, at worst he should have been convicted of involuntary manslaughter or second degree murder. This so-called "new" evidence was not presented at trial because of Puente's strategic choice, since the misidentification defense used at trial flowed ineluctably from Puente's position that he was not at the El Saloon. *See* Fed. Tr. at 173 (Marcus testified that he felt that he had no choice but to proceed to trial on the first-degree murder charge since Puente would not allow him to engage in plea negotiations and took the position that "[h]e didn't shoot anybody. He wasn't there, and he didn't shoot anybody."); *see also id.* at 174-75 ("I could have put on an involuntary manslaughter defense, except my client is telling me he didn't do it. So what was I going to put

on? . . . . He maintained his innocence throughout.  I can't ask him to plead – I would be sitting here on another petition.  I couldn't ask him to plead guilty to something he didn't do.").

Accordingly, the evidence Puente points to in support of his procedural innocence claim was available to him at the time of the trial.  There is a circuit split regarding what evidence is "new" for purposes of establishing procedural innocence.  *See Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012).  In *Gomez v. Jaimet*, 350 F.3d 673 (7th Cir. 2003), the Seventh Circuit held that evidence is "new" if it was not presented at trial, even if it was known to a defendant at the time of trial.  *Accord Griffin v. Johnson*, 350 F.3d 956, 962-63 (9th Cir. 2003).[9]  In *Gomez*, the habeas petitioner argued that trial counsel was ineffective because he knew about evidence that allegedly proved the petitioner's innocence (statements by co-defendants and the defendant's own testimony) but chose not to present it.  The Seventh Circuit held that the federal habeas court could consider the evidence, reasoning that:

> [i]f procedurally defaulted ineffective assistance of counsel claims may be heard upon a showing of actual innocence, then it would defy reason to block review of actual innocence based on what could later amount to the counsel's constitutionally defective representation.  The burden for proving actual innocence in gateway cases is sufficiently stringent and it would be inappropriate and unnecessary to develop an additional threshold requirement that was not sanctioned by the Supreme Court . . . . [M]erely putting a different spin on evidence that was presented to the jury does not satisfy the *Schlup* requirements,

---

[9]  Other circuits have held that "new" evidence must not have been available at the time of trial.  *See Houck v. Stickman*, 625 F.3d 88, 94 (3d Cir. 2010) ("new" evidence must have been unavailable at the time of trial unless a petitioner seeks to use that evidence to excuse a procedurally defaulted ineffective assistance of trial counsel claim based on the failure to present the evidence he claims proves his innocence); *Kidd v. Norman*, 651 F.3d 947, 951-54 (8th Cir. 2011) (evidence is "new" only if "it was not available at the time of trial through the exercise of due diligence"); *Hubbard v. Pinchak*, 378 F.3d 333, 341 (3d Cir. 2004) (evidence is new if it was previously undiscoverable); *Cleveland*, 693 F.3d at 636-37 & n.4 (finding that an alibi affidavit submitted after trial was "new evidence" where the petitioner alleged ineffective assistance of counsel and it was unclear why counsel did not obtain a statement from the alibi witness earlier).

see *Bannister v. Delo*, 100 F.3d 610, 618 (8th Cir. 1996), but if a petitioner comes
forth with evidence that was genuinely not presented to the trier of fact then no
bar exists to the habeas court evaluating whether the evidence is strong enough to
establish the petitioner's actual innocence.

*Id*. at 680.

*Gomez* thus rests on a recognition that it would be unfair to block a petitioner from using

procedural innocence to avoid default of an underlying ineffective assistance claim when the

claim of procedural innocence and the defaulted ineffective assistance claim are based on the

same allegations about counsel's alleged ineffectiveness in failing to present evidence.  *See*

*Gomez*, 350 F.3d at 679-80 (if "the underlying constitutional violation claimed is the ineffective

assistance of counsel premised on a failure to present evidence, a requirement that new evidence

be unknown to the defense at the time of trial would operate as a roadblock to the actual

innocence gateway.").

In contrast, in this case, there is no outstanding ineffective assistance of counsel claim

tied to the failure to present the "new" evidence at trial.  As discussed in detail in the court's

November 8, 2013 order, counsel presented a misidentification defense because Puente took the

position that he was not at the El Saloon at the time of the shooting.  The court has already found

that the decision to present a misidentification defense – and deny that Puente was at the El

Saloon when Rodriguez was shot – was constitutionally adequate.  This leaves Puente with the

argument that this court should consider new evidence (his post-trial version of events that

places him at the El Saloon and attempts to explain why the shooting was unintentional) to

excuse the default of various ineffective assistance of counsel claims when the decision to

withhold that evidence at trial was made by Puente and did not result from ineffective assistance

of trial counsel.

The court does not believe that *Gomez* goes this far. That decision assumes that the petitioner has a potentially valid ineffective assistance of counsel claim, which is not the case here. Instead, the court finds that the Third Circuit's decision in *Hubbard v. Pinchak*, 378 F.3d 333 (3d Cir. 2004), is instructive. In *Hubbard*, Hubbard and others were indicted based on a fatal gunshot wound. In a bill of alibi particulars before the grand jury, Hubbard asserted that he was innocent because he was out of town on the night of the shooting. At trial, Hubbard's co-defendants testified that Hubbard shot the victim and other witnesses placed Hubbard at the scene. No testimony linked the murder weapon to Hubbard and no forensic evidence linked him to the victim or the scene of the crime.

"Hubbard's defense was presented primarily by his trial counsel's summation to the jury, which stated, 'Our whole position throughout this case is we weren't there, weren't there when it happened so as a result we can't be guilty.'" *Id*. at 340. Trial counsel also presented numerous arguments about evidence that the jury could have used to infer that Hubbard was not at the scene of the shooting. The jury nevertheless found that Hubbard was guilty of, among other things, felony murder.

In his § 2254 petition, Hubbard claimed that his trial counsel failed to present an adequate defense. The district court held that Hubbard had procedurally defaulted this claim and rejected Hubbard's argument that actual innocence excused his default. On appeal, Hubbard again asserted actual innocence based on his assertions about what he could have testified about at trial (that he was out of town at the time of the shooting). The Fourth Circuit held that Hubbard himself made the choice not to testify at trial. It thus rejected Hubbard's attempt to use his "own late-proffered testimony" to support an actual innocence claim, explaining that "[t]o

allow Hubbard's own testimony that he proffers (supported by no new evidence) to open the gateway to federal review of claims that have been procedurally defaulted under state law would set the bar for 'actual innocence' claimants so low that virtually every such claimant would pass through it. This would stand in stark contrast to the caveat of the Supreme Court to exercise restraint and require a 'strong showing of actual innocence.'" *Id*. at 340-41.

Here, as in *Hubbard*, Puente is attempting to use a change of heart about his defense strategy following his conviction as an excuse to open the actual innocence gateway to avoid default of numerous procedurally barred claims. Critically, he elected not to present what he now claims is "new" evidence to the jury and this court has already found that he received constitutionally adequate advice when making that decision. Allowing Puente to use his "new" evidence to support an actual innocence claim would eviscerate *Schlup* by allowing him to retry his case in federal court based on evidence that was known to him but not presented at trial due to his own strategic decision to deny he was at the El Saloon when Rodriguez was shot.

This scenario was not contemplated by *Gomez*. Thus, the court declines to consider Puente's current version of events as evidence in support of his procedural innocence claim. This means that the court's inquiry regarding the fundamental miscarriage of justice exception to procedural default is over. This exception to procedural default is unavailable, for both Claim 1(a) and the other procedurally defaulted claims discussed below.

### 2. Failure to Challenge Allegedly Biased Jurors – Claim 1(b)

Puente next contends that trial counsel was ineffective due to the failure to challenge eight jurors who were potentially biased in favor of the State because they were either victims of

crime or closely connected to law enforcement officers or victims of crime. Memo. in Support of Amended Pet. at 60-63. He asserts that:

> The eight questionable jurors were: Mercado (member of immediate family a police officer and a very close friend the victim of a property crime), Kampf (victim of petty theft, brother had his car stolen), Auterman (both he and his roommate were victims of separate muggings), Blacigek (son [of] a malpractice attorney and formerly employed by the "Illinois Appellate Division," aunt killed by a drunken driver), Hernandez (ex-wife's cousin a postal police agent), Gillman (father a patent attorney, close friend victim of a property crime), Heilman (close friend of a Cook County Assistant State's Attorney, first cousin a law clerk), and Guillen (victim of a pick pocket).

*Id*. at 61. According to Puente, if his counsel had challenged these jurors or asked follow up questions after the trial court asked the jurors if they could be fair to both sides, the composition of the jury would have been different and he would not have been convicted. The state court disagreed, holding that mere suspicion of bias was insufficient to disqualify a juror. Resp. Ex. R at 11.

The court begins with the fact that ineffective assistance of trial counsel based on the failure to probe alleged juror bias issue – Claim 1(b) – was raised only in Puente's state post-conviction proceedings, not on direct appeal. The court thus turns to the familiar task of ascertaining if this claim was raised in all three levels of Puente's post-conviction proceedings.

In his post-conviction petition, Puente asserted ineffective assistance based on the failure to challenge the alleged bias of four of the eight jurors listed in his § 2254 brief (Mercado, Blacigek, Hernandez, and Gillman). He also claimed that juror Guillen mentioned "that she might have seen [Puente] before" and theorized that Guillen was prejudiced against him because "if she knew [Puente] in a nice way she would not have indicated it to the Court." Resp. Ex. D at 8. Because Puente presented Claim 1(b) to the state trial court but limited it to jurors

Mercado, Blacigek, Hernandez, and Gillman, Puente's request for habeas relief based on ineffective assistance relating to the alleged bias of different jurors is procedurally defaulted under the one full round doctrine.

Determining if Claim 1(b) is defaulted vis-a-vis jurors Mercado, Blacigek, Hernandez, and Gillman requires a foray into Puente's state court proceedings. Puente initially filed a pro se petition for state post-conviction relief. Resp. Ex. D. On appeal, his appointed counsel sought leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Resp. Ex. F. The Illinois Appellate Court allowed counsel to withdraw and affirmed the denial of post-conviction relief. Resp. Ex. H. Puente filed a pro se petition for leave to appeal, Resp. Ex. I, and the Illinois Supreme Court denied permission to appeal but vacated the Illinois Appellate Court's order affirming the denial of post-conviction relief and directed the state public defender to file a merits brief before the Illinois Appellate Court, Resp. Ex. J. Counsel filed a brief, Resp. Ex. K, and the Illinois Appellate Court then again affirmed the trial court, Resp. Ex. L. Puente filed a pro se petition for leave to appeal, Resp. Ex. M, which was denied, Resp. Ex. N.

The Illinois Supreme Court's vacatur of the first decision issued by the Illinois Appellate Court restored the parties to the status quo that existed before the Illinois Appellate Court ruled. *See People v. Izquierdo-Flores*, 854 N.E.2d 1156, 1164 (Ill. App. 2006) (vacatur restores the status quo as though a judgment had never been entered). Thus, Puente started afresh at the intermediate appellate court level with the assistance of the attorney appointed by the Illinois Appellate Court. To avoid default of Claim 1(b), Puente needed to raise that claim in the appellate brief filed in connection with his second appeal to the Illinois Appellate Court following the Supreme Court's vacatur and remand.

Puente concedes that he did not do so.  Reply at 6.  The fact that he raised this claim at other stages of his post-conviction proceedings is irrelevant because as discussed above, a petitioner must raise a claim through one complete round of state court review to avoid default. A petitioner who skips the intermediate state appellate court cannot meet this standard.  *See Castille*, 489 U.S. at 349 (failure to present claim to state intermediate court means it is procedurally barred).

Puente contends that his default should be excused because appellate counsel was ineffective for omitting the issue.  Appellate counsel's failure to preserve Claim 1(b) by raising it in Puente's post-conviction appeal following the vacatur and remand does not excuse Puente's default because, as with Claim 1(a), Puente may use ineffective assistance of appellate counsel as cause to excuse the default of an underlying ineffective assistance of trial counsel claim only if he presented a claim of ineffective assistance as cause through one full round of state court review.  *See Edwards*, 529 U.S. at 450-51.  Puente does not contend that he did so, and his state court filings do not appear to contain this claim at all three levels of Puente's post-conviction proceedings.  Thus, Claim 1(b) is procedurally defaulted under the one full round doctrine. Moreover, for the reasons discussed above, the fundamental miscarriage of justice exception does not excuse Puente's default.  Claim 1(b) is, therefore, denied.

### 3.     Failure to Investigate – Claim 1(c)

Puente's failure to investigate claim contains multiple sub-parts.  In sum, Puente claims that trial counsel's performance was deficient because he did not investigate certain facts and did not adequately research the law.  The court generally begins by considering procedural default under the one full round doctrine.  This is an especially difficult task here, as Puente's pro se

state court post-conviction petition (Resp. Ex. D) is largely stream of consciousness, and his counseled state court appellate brief (Resp. Ex. K) mixes failure to investigate claims with other claims, making it difficult to understand the contours of the failure to investigate claims. Counsel's lengthy filings before this court do not help matters, as Puente's arguments about the failure to investigate focus on trial counsel's alleged failure to investigate facts relevant to the decision to pursue a misidentification defense, and the court has already rejected that ineffective assistance claim.

The court will nevertheless forge on, aided by its study of the state court record and the Illinois Appellate Court's order addressing the merits of Puente's post-conviction claims.[10]  The Illinois Appellate Court held that Puente raised seven points about the failure to investigate that generally track the failure to investigate claims raised in his § 2254 petition.  *See* Resp. Ex. L at 10 (Illinois Appellate Court post-conviction opinion); *see also* Resp. Ex. D (pro se state post-conviction petition).  This court agrees that the Illinois Appellate Court's list accurately summarizes the failure to investigate claims raised in Puente's pro se post-conviction petition: (1) detectives arrested Puente at work without a search warrant; (2) detectives failed to advise him of his *Miranda* rights; (3) he was denied his right to counsel during the line-up; (4) the detectives could not speak Spanish; (5) two empty shells were recovered inside the El Saloon; (6) the El Saloon was small; and (7) he was under the influence of alcohol and cocaine at the time of the shooting.

_____

[10]  On direct appeal at the Illinois Appellate Court level, Puente challenged the length of his sentence.  *See* Resp. Ex. A (Illinois Appellate Court opinion on direct appeal).  Thus, for purposes of Puente's failure to investigate claims, only his state post-conviction proceedings are relevant.

### a.    Failure to Investigate:  Probable Cause – Claim 1(c)(i)(A)

In his opening memorandum, Puente states that his "counsel at the hearing to suppress [Puente's] statement . . . failed to investigate and develop on cross-examination of Det. Perez the facts regarding (a) probable cause for Mr. Puente's arrest."  Memo. in Support of Amended Pet. at 63.  In Puente's reply memorandum, he briefly criticizes trial counsel's cross-examination of Detective Perez at the suppression hearing.  Reply at 14 (investigatory failures include trial counsel's "failure to properly cross-examine Det. Perez at the suppression hearing (not trial) on probable cause for the arrest.").

It is true that Puente's counsel did not question Detective Perez about probable cause during the suppression hearing.  Suppression Hearing Tr. at B-3 to B-65.  This is likely because the court's review of the state court record does not show that Puente ever challenged the existence of probable cause in his state court proceedings.  Whether the court construes Claim 1(c)(i)(A) as a contention that counsel was ineffective for failing to investigate and then challenge the existence of probable cause or an argument that counsel was ineffective for not questioning probable cause during the suppression hearing, the result is the same:  Puente's failure to raise this issue (however framed) through one complete round of state court review means that it is procedurally barred.  As discussed above, no cause and prejudice exists to excuse this default and the fundamental miscarriage of justice exception is inapplicable.  This claim is denied.

### b.    Failure to Investigate:  Facts Relating to the Lack of an Arrest Warrant (Claim 1(c)(i)(B)) & Waiver of *Miranda* Warnings (Claim 1(c)(i)(D))

In its order addressing Puente's post-conviction appeal, the Illinois Appellate Court properly identified *Strickland* as the governing standard when it discussed Puente's claim that counsel failed to investigate facts relating to the lack of an arrest warrant and his waiver of *Miranda* warnings. Resp. Ex. L at 4-5. Specifically, it stated:

> [Puente] fails to demonstrate by a reasonable probability that the outcome of the trial would have been different had counsel investigated and presented [the seven topics that Puente raised in his state post-conviction petition, including the lack of a warrant and allegedly defective *Miranda* warnings] to the jury. The record shows that, on June 18, 1995, [Puente] got into an argument with Rodriguez, exited the tavern, obtained a gun, returned to the tavern several hours later and fatally shot Rodriguez. Counsel cross-examined a police detective with respect to the circumstances surrounding [Puente]'s arrest and subsequent lineup identification.
>
> [Puente] presented no evidence demonstrating that counsel's failure to submit evidence regarding the shells found at the tavern or the size of the tavern was anything other than sound trial strategy. Accordingly, [Puente]'s claim that trial counsel was ineffective for failing to conduct an adequate investigation is without merit.

Resp. Ex. L at 10-11.

This explanation is regrettably terse. In addition, the factual underpinnings of the statement that Puente left the El Saloon and returned "several hours later" armed with a gun are unclear. On direct appeal, Puente and the State filed briefs that accurately reflect the evidence presented by the State at trial: Puente left the El Saloon, retrieved a gun from a car, returned a few minutes later, and discharged his gun several times while inside the El Saloon.[11] *See* Resp. Ex. O at 2 (Puente's direct appeal opening brief, detailing the events prior to the shooting); Resp.

---

[11] In contrast, during the evidentiary hearing before this court, Puente contended that he arrived at the El Saloon already armed, as he had a gun in his pocket that he had attempted to sell earlier in the day. According to Puente, Rodriguez was fatally wounded when he was accidentally struck by a bullet after Puente's gun accidentally discharged towards the ceiling when he tripped on his flip-flop sandals during an altercation with other patrons of the El Saloon.

Ex. P at 2 (the State's direct appeal response brief) (same); *see also United States ex rel. Puente v. Chandler*, No. 04 C 4877, 2010 WL 3167201, at *4 (N.D. Ill. Aug. 6, 2010) (holding that the Illinois Appellate Court's finding that Puente returned "several hours later" with a gun was not supported by the record).

Nevertheless, this court agrees that Puente has failed to demonstrate that the outcome of the trial would have been different if counsel had investigated the lack of a warrant and the allegedly defective *Miranda* warnings and then presented evidence regarding these issues to the jury. Even assuming that counsel's failure to assert at trial that Puente's warrantless arrest and allegedly defective *Miranda* warnings to the jury were deficient (an issue which the court need not reach), the failure to investigate these topics and then present the fruits of the investigation at trial does not satisfy *Strickland*'s prejudice prong.

### i. Failure to Investigate: Facts Relating to the Lack of an Arrest Warrant (Claim 1(c)(i)(B))

Puente has not explained how the alleged lack of investigation about his warrantless arrest was prejudicial. Puente concedes that during the suppression hearing, his counsel attempted to cross-examine Detective Perez about the lack of a warrant. Memo. in Support of Amended Pet. at 9. Counsel at the suppression hearing thus clearly knew about Puente's warrantless arrest. With respect to James Marcus (Puente's trial counsel), Puente does not clarify what would have been different had counsel performed additional investigation about the lack of a warrant and presented this unspecified information to the jury. Because his argument about the prejudice prong of *Strickland* is perfunctory, it is waived. *See Kirkpatrick v. Lambert*, No. 12 C 50400, 2013 WL 5477567, at *6 (N.D. Ill. Oct. 2, 2013). Thus, Claim 1(c)(i)(B) is denied.

### ii.    Failure to Investigate: Waiver of *Miranda* Warnings (Claim 1(c)(i)(D))

With respect to Puente's claim about the failure to investigate alleged violations of his *Miranda* rights (Claim 1(c)(i)(D)), on cross-examination, Detective Perez testified that Puente did not have an attorney with him at the police station when he spoke to police. Trial Tr. E-211. Detective Perez also conceded that although he testified that he read Puente his *Miranda* rights, no documentation supported this claim. *Id.* The Illinois Appellate Court held that given all of the evidence presented at trial, Puente failed to demonstrate by a reasonable probability that the outcome of the trial would have been different had trial counsel (James Marcus) investigated and raised Puente's *Miranda* claim at trial.

Puente's submissions to this court discuss the failure-to-investigate *Miranda* issue in the context of the performance of counsel at the suppression hearing (attorney Jesus Perez). Memo. in Support of Amended Pet. at 8, 9, 10, 16, 64; Reply at 14. They do not include arguments about this issue that are directed at Marcus's performance during trial. An argument about Perez's performance at the suppression hearing does not provide sufficient detail regarding Puente's claim that Marcus was ineffective during trial due to his failure to investigate the alleged violation of Puente's *Miranda* rights. Thus, Claim 1(c)(i)(D) is waived due to its perfunctory presentation. *See Kirkpatrick*, 2013 WL 5477567, at *6.

### c.    Failure to Investigate:  Whether Puente's Confession Was Coerced – Claim 1(c)(i)(C)

Claim 1(c)(i)(C) is that attorney Perez was ineffective because of his failure to investigate facts relating to Puente's allegedly coerced confession. Puente's memorandum supporting his request for habeas relief mentions the allegedly coerced confession when

criticizing Perez's performance during the suppression hearing.  Memo. in Support of Amended
Pet. at 10, 64.  There is no discussion of how any unspecified further investigation would have
affected the result, and the coerced confession issue does not come up at all in Puente's reply.
Hence, Claim 1(c)(i)(C) is waived due to its perfunctory presentation.  *See Kirkpatrick*, 2013
WL 5477567, at *6.

### d. Failure to Investigate:  Facts Relating to the Line-Up and Photo Array – Claim 1(c)(ii)

Prior to trial, Villalobos and Perez filed a motion to suppress Puente's alleged statement
to the police.  They did not, however, seek to suppress any evidence relating to the line-up or
photo array.  At trial, Detective Perez testified about the line-up and photo array, Trial Tr. at
181-91, and Marcus cross-examined him at length about these subjects, *id*. at 190-208.
According to Puente, the absence of a motion to suppress the identity evidence demonstrates that
his counsel failed to investigate "the facts regarding the State's unduly suggestive photo array
and suggestive line-up evidence."  Memo. in Support of Amended Pet. at 64.[12]  Puente also
contends that he preserved this claim for federal review.  For the following reasons, Claim
1(c)(ii) is procedurally defaulted under the independent and adequate state ground doctrine and
no exceptions to procedural default apply.

### i. The Independent and Adequate State Ground Doctrine

In support of Claim 1(c)(ii), Puente argues that:

[his] first retained counsel [Villalobos] or attorneys standing in for him [Jesus
Perez], and [Puente's] second retained counsel who tried the case [Marcus], failed

---

[12]  Claim 1(c)(ii) thus essentially recasts Claim 1(a) (ineffective assistance based on trial
counsels' failure to move to suppress evidence related to the line-up and photo array) as a failure
to investigate claim.

-34-

to investigate the facts regarding the State's unduly suggestive photo array and suggestive line-up evidence. Those facts were included in the State's production in discovery, which consisted in part of copies of police reports and police photographs comprising the photo array, line-up and related photographs in which [Puente] was dressed as the offender and otherwise distinguished from the other participants. *Evidence of such failure to investigate is the absence of a motion to suppress the State's suggestive identity evidence arising out of the photo array and line-up.*

Memo. in Support of Amended Pet. at 64 (emphasis added).[13]

In Puente's state collateral proceedings, the Illinois Appellate Court found that Puente had waived a failure to investigate claim based on the lack of a motion to suppress by failing to include it in his pro se post-conviction petition. Resp. Ex. L at 6. As the court explained:

[Puente] has offered no explanation as to why this claim of ineffectiveness was not raised in his pro se post[-]conviction petition. Accordingly, he has failed the "cause" portion of the fundamental fairness test. Moreover, [Puente] has not shown that the testimony involving the alleged suggestive lineup infected his entire trial with error of constitutional dimensions. Fundamental fairness does not compel a relaxation of the waiver rule under these circumstances and, therefore, [Puente's] argument that trial counsel was ineffective for failing to move to suppress allegedly unduly suggestive identification testimony is waived.

Resp. Ex. L at 7.

The respondent contends that the state court's finding of waiver means that Claim 1(c)(ii) is procedurally defaulted under the independent and adequate state ground doctrine. Under this doctrine, the court may not "review a question of federal law decided by a state court if the

---

[13] Puente also asserts, in a single sentence at the end of his discussion regarding the failure to file a motion to suppress the identification testimony, that Marcus was ineffective because he did not object to the use of the photo array and line-up photographs at trial. Memo. in Support of Amended Pet. at 64. His reply memorandum does not expand on this sentence. Instead, it discusses whether he did, in fact, raise the argument about counsels' failure (presumably, Perez and Villalobos) to file a motion to suppress at the trial court level. Reply at 3. The argument that Marcus was ineffective because he did not object to the use of the identification testimony is waived due to its perfunctory presentation. *See Kirkpatrick*, 2013 WL 5477567, at *6.

decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *superseded by statute on other grounds*, 28 U.S.C. § 2254(b)(2). A state law ground is independent when "the state court actually relied on a state rule sufficient to justify its decision" and is adequate when the state court applies the rule "in a consistent and principled way." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382-83 (7th Cir. 1990).

Puente does not contest that the state court's reliance on waiver is an independent and adequate state ground. Instead, he asserts that the independent and adequate state ground doctrine does not apply because the state court erred when it found that he had waived Claim 1(c)(ii) (that his trial attorneys were ineffective because they did not investigate and then move to suppress the allegedly suggestive identification testimony). In support, he points to the following two sections of his pro se state post-conviction petition:

> "it was the Ineffectiveness of Counsel for not objecting as to photo array by Det. Perez. . . . But the real fact the conviction was based on itself on a suggestive identification as a defense."

> "[f]urther Police Misconduct went hand in hand with Prosecutoral [sic] Misconduct. First by Det. Perez suggestive identification to assure a conviction by the following: Photo Array . . . . Suggestive Identification based as to different hats given to the possible perpetrators but only given a black hat to Petitioner, suggestive as to age, also tattoo which was obvious on Petitioner, and most revealing was the size of Petitioner, he was the shortest of all possible perpetrators."

Memo. in Support of Amended Pet. at 3 (citing Resp. Ex. D at 11-13).

"Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." *Bolton*, 730 F.3d at 695. This principle applies to suggestive identification claims. *Id*. The court has read Puente's

pro se state post-conviction petition broadly and with the benefit of a deep knowledge of the state court record due to a 4-day evidentiary hearing. It finds that the two portions of Puente's petition quoted above do not fairly present the operative facts and legal principles governing a claim that Puente's trial counsel was ineffective for failing to investigate and then moving to suppress allegedly unduly suggestive identification testimony. Specifically, arguments about the alleged shortcomings of the line-up and photo array are not synonymous with a claim that attorneys Villalobos and Perez provided ineffective assistance because they failed to investigate facts that would have caused a constitutionally adequate attorney to file a motion to suppress the identification testimony. Thus, Claim 1(c)(ii) is barred by the independent and adequate state ground doctrine.

### ii.        Exceptions to Procedural Default

As a fall-back, Puente appears to be arguing that, if the court finds that Claim 1(c)(ii) is procedurally barred, his pro se status is cause that excuses his default. The Seventh Circuit has "specifically rejected the argument that a petitioner's pro se status alone constitutes cause in a cause-and-prejudice analysis." *Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652, at *21 (N.D. Ill. Aug. 19, 2013) (quoting *Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010) (collecting cases)). Moreover, as discussed above, the Supreme Court's decisions in *Martinez* and *Trevino*, which address whether the failure to raise a claim in an initial state post-conviction petition can be used to excuse default if the petitioner was proceeding pro se, provide no succor to Puente because they are not applicable to post-conviction proceedings in Illinois. Thus, Puente is not entitled to relief based on Claim 1(c)(ii).

### e.        Failure to Investigate:  Morales' Vision – Claim 1(c)(iv)

Claim 1(c)(iv) is that Marcus failed to investigate facts relating to bar patron Morales' vision problems. The court once again begins by asking if Puente presented this claim through one complete round of state court review. This claim does not appear in Puente's Illinois Appellate Court briefs in Puente's direct or post-conviction proceedings. It is, therefore, procedurally defaulted under the one full round doctrine, *see Boerckel*, 526 U.S. at 845, and no exceptions to procedural default are applicable for the reasons discussed above.

In any event, this claim is unavailing. The trial transcript shows that Marcus cross-examined Morales about the line-up, Morales' vision (specifically, the fact that Morales was not wearing his prescription eye glasses and had cataracts), details about the El Saloon's layout and Morales' ability to see events happening in the bar, the number of people between him and Puente when Rodriguez was shot (approximately fifteen), and the "half light" conditions in the El Saloon due to poor lighting and light entering the bar from the open door to the outside when Morales said Puente left the El Saloon. *See* Trial Tr. E132-150 (cross-examination); Trial Tr. E153-158 (re-cross-examination).

Counsel's examination regarding Morales' vision easily satisfies the performance prong of *Strickland* as he asked reasonable questions that brought this issue to the jurors' attention. Marcus also revisited the low lighting at the El Saloon in his closing argument, Trial Tr. F-55, and noted Morales' testimony, including his vision issues, Trial Tr. F-63-666.[14] The trial

---

[14] Specifically, in closing arguments, Marcus stated: "One very, very, very important point. You may have heard this on cross examination. And it is certainly key to his identification. Mr. Morales, Juan Morales, wears glasses. He has a prescription for them. He has cataracts. Did he have them on that night. No. Did he have them on when he testified yesterday, No. Did he identify my client. You bet. From that chair to where my client is sitting, estimate what, about 30 feet. You people can judge it as well as I can. 30,40 feet." Trial Tr. F-64-65.

transcript thus belies any claim that Marcus failed to investigate Morales' vision and, therefore, did not effectively cross-examine Morales about this issue. Accordingly, Claim 1(c)(iv) is defaulted and, alternatively, fails on the merits.

**f.** **Failure to Investigate: Jury Instruction Regarding Involuntary Manslaughter – Claim 1(c)(vi)(B)**

In his next failure to investigate claim, Puente contends that Marcus erred when he asked for an instruction on involuntary manslaughter, and that his error was due to a failure to conduct adequate research.[15] Puente notes (without citing to the state court record) that during the jury instruction conference, Marcus argued that the trial record did not show that Puente entered the El Saloon intending to kill Rodriguez. *See* Memo. in Support of Amended Pet. at 70. Puente's argument is confusing, as he appears to be faulting Marcus for requesting an instruction – based on the best possible gloss of the facts given Puente's position that he was not at the El Saloon at the time of the shooting – that would have been favorable to him. Puente appears to be claiming that counsel failed to perform adequate legal research because he should have known that a request for an involuntary manslaughter instruction would fail given the evidence presented at trial. *See id.* at 70-71.

Puente has defaulted this issue as he does not appear to have raised it though a complete round of state court proceedings. Moreover, as discussed above, Puente has defaulted any claim that ineffective assistance of counsel could constitute cause that would excuse his default or that

---

[15] In his discussion of the involuntary manslaughter instruction issue, Puente includes a single sentence asserting that Marcus should have also requested a second degree murder instruction. The court has already rejected this contention. *See supra* at n. 4.

the fundamental miscarriage of justice exception to default is applicable. Claim 1(c)(vi)(B), therefore, fails.

> ### g. Failure to Investigate: Jury Instruction Regarding Reliability of Witness Testimony – Claim 1(c)(vi)(D)
>
> ### Failure to Object to the Jury Instruction About Witness Identification Testimony – Claim 1(f)

Puente's final failure to investigate claim is that trial counsel failed to research "the legal basis of the trial court's instruction to the jury on assessing the reliability of witness testimony" (*id*. at 71) and thus failed to object to an erroneous instruction regarding witness identification testimony. Puente also lists the failure to object to the witness identification instruction as a separate ineffective assistance of counsel claim (*id*. at 90-94). In support of his failure to investigate claim, Puente asserts generally that counsel was ineffective because he did not object to an instruction about the reliability of witness testimony in violation of *Neil v. Biggers*, 409 U.S. 188 (1972). In that case, the Supreme Court held that "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200.

The second incarnation of this claim – Claim 1(f) (the standalone ineffective assistance of counsel claim based on the failure to object to the witness credibility instruction) – is more fleshed out. Puente asserts that the trial court gave an instruction that did not comply with *Neil v. Biggers* because the instruction included the disjunctive "or" between each factor instead of the conjunctive "and" required by the Supreme Court. Specifically, the jury was instructed:

When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including but not limited to the following:

The opportunity the witness had to view the offender at the time of the offense; or

The witness's degree of attention at the time of the offense; or

The witness's earlier description of the offender; or

The level of certainty shown by the witness when confronting the defendant; or

The length of time between the offense and the identification confrontation.

Memo. in Support of Amended Pet. at 90.

The court need not dig through the trial court record in an effort to locate where (if at all) this issue was presented to the trial court, as Puente's direct appeal to the Illinois Appellate Court contains a single issue: that his sentence was excessive. Resp. Ex. B. In turn, in his state post-conviction proceedings, the Illinois Appellate Court held that Puente raised this issue at the appellate court level but did not raise it in his pro se state post-conviction petition. Resp. Ex L at 8. Puente also did not raise this issue in his pro se post-conviction petition for leave to appeal. Resp. Ex. L. Because he did not raise the issue through one full round of state court review (the trial court, the Illinois Appellate Court, and the Illinois Supreme Court in either direct or post-conviction proceedings), it is procedurally defaulted. *See Boerckel*, 526 U.S. at 845.

Puente concedes that he procedurally defaulted any claim based on the failure to object to the witness credibility instruction. Memo. in Support of Amended Pet. at 92. He nevertheless suggests that the Illinois Appellate Court on post-conviction review should have ignored the fact that he failed to raise this claim in his post-conviction petition and opted to reach the merits

based on principles of "fundamental fairness." *Id.* The Illinois Appellate Court, however, was entitled to rely on state procedural rules requiring criminal defendants to raise their claims before the trial court in the first instance. *See, e.g., Woods v. Schwartz*, 589 F.3d 368, 376 (7th Cir. 2009) (finding that a claim was defaulted based on an independent and adequate state ground when the Illinois Appellate Court disposed of a claim based on the "state-law doctrine of waiver").

In any event, Puente's present contention that the state court should have reached the merits based on "fundamental fairness," read broadly, appears to be a claim that the state court violated his right to due process by rejecting the jury instruction claim based on a finding of waiver. He did not, however, frame his witness credibility jury instruction in due process terms through one full round of state court review. Under the doctrine of full and fair presentment, a habeas petitioner must allow the state courts to consider his federal constitutional arguments in the first instance. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Thus, a petitioner must alert the state courts that his claims are based on the United States Constitution. *See id.*; *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.") (internal citations omitted). Puente's failure to argue in his state court proceedings that his default should be excused based on a violation of his right to due process under the federal constitution means that any due process claim is defaulted under the doctrine of full and fair presentment.

Puente also argues that his default should be excused because his appointed counsel failed to raise his jury instruction argument before the Illinois Appellate Court on either direct or

state collateral review. As discussed above, Puente has defaulted any claim that ineffective assistance of counsel could constitute cause and the fundamental miscarriage of justice exception is inapplicable.

Setting default aside, Puente's claim would still fail on the merits. *Neil* involved the reliability of a witness' identification of the defendant at a "show-up" where the defendant walked past the victim by himself. The court applied a "totality of the circumstances" test to determine if the in-court identification of the defendant was reliable despite the line-up's suggestiveness. *Neil*, 409 U.S. at 199. According to Puente, under *Neil*, the trial court was required to instruct the jury that they had to consider all of the factors listed by the Supreme Court when evaluating testimony identifying him as the shooter.

Even accepting Puente's description of the line-up, the instruction given by the trial court is neither contrary to, nor an unreasonable application of, *Neil*. The jury was instructed to weigh identification testimony by considering "all the facts and circumstances in evidence, including but not limited to" the factors listed in *Neil*. Memo. in Support of Amended Pet. at 90. This instruction sufficiently advised the jury that they were required to consider the totality of the circumstances when assessing the reliability of in-court identification testimony. *See Neil*, 409 U.S. at 199; *see also United States v. Recendiz*, 557 F.3d 511, 525 (7th Cir. 2009) ("reliability is the linchpin in determining the admissibility of identification testimony") (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). Thus, Puente is not entitled to relief based on Claims 1(c)(vi)(D) and 1(f).

### 4. Trial Counsel's Alleged Failure to Advise Puente of His Right to Testify and Decision to Pursue a Defense of Mistaken Identity" – Claim 1(d) & (e)

Puente asserts that trial counsel James Marcus prevented him from exercising his right to testify by "keeping him off the witness stand and not advising him of his right to testify, while pursuing an unsound defense of mistaken identity."  Memo. in Support of Amended Pet. at 86-90.  The court considered and rejected this claim in its November 8, 2013 order, and will not revisit its prior ruling.

### 5. Ineffective Assistance:  Cumulative Effect of Trial Counsel's Errors – Claim 1(f)

Finally, Puente contends that the state courts erred by considering his ineffective assistance claims "separately, without assessing the cumulative effects of [Puente's] trial counsel's deficient performance."  Memo. in Support of Amended Pet. at 94.  In his reply memorandum, Puente asserts that the respondent did not address this claim and thus forfeited the right to contest it.  Reply at 31.

"The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error."  *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir.2000) (internal quotation marks omitted).  Puente does not assert that he raised a cumulative error claim in his direct appeal or post-conviction proceedings.  Accordingly, it is procedurally defaulted, *see Boerckel*, 526 U.S. at 845, and as discussed above, no exceptions to default are available.  The court also rejects Puente's contention that he should prevail on this claim because the respondent did not oppose it.  Given the superfluity of arguments in Puente's 117-page memorandum, the absence of any comment by the respondent is an entirely understandable oversight.

**B.      Errors by the Trial Court (Claim 2)**

The court next turns to the second group of claims, which are based on errors purportedly made by the trial court.

**1.      Denial of Puente's Motion for a Mistrial – Claim 2(a)**

In Claim 2(a), Puente argues that he is entitled to habeas relief because the trial court failed to declare a mistrial based on prosecutorial misconduct.  Memo. in Support of Amended Pet. at 96-98.  The alleged prosecutorial misconduct is the State's elicitation of Detective Perez's testimony that he obtained Puente's photograph from police records for use in the photo array and did not ask Puente if he used an alias because he already had Puente's "criminal history." *Id*. at 96.  Puente also argues that the trial court should have granted a mistrial based on the State's argument, during its rebuttal case, that Puente could have called witnesses of his own to testify about the shooting.  According to Puente, since he would have been the key witness regarding his version of events, this argument improperly referred to his right to remain silent.

The respondent asserts that Puente's mistrial claim based on alleged prosecutorial misconduct is procedurally defaulted because Puente failed to present it through one complete round of state court review.  Puente disagrees, asserting that he raised the claim at all three levels of his state post-conviction proceedings.

The respondent agrees that Puente raised Claim 2(a) at the trial court level in his pro se state post-conviction petition (Resp. Ex. D), as well as in his pro se post-conviction brief filed with the Illinois Appellate Court (Resp. Ex. G).  Resp. at 18.  The respondent asserts, however, that Puente did not raise this claim in his pro se petition for leave to appeal filed with the Illinois Supreme Court (Resp. Ex. I).   In response, Puente points to page 6 of his petition for leave to

appeal, which asserts that "[t]he prosecutor allowed into evidence inflammatory and prejudicial statements by the state's witness, Detective Perez, that tied [Puente] to police photographs of other individuals who had been previously arrested. [Puente] states that an automatic mistrial should have been granted." *Id*. at 6, ¶ 2(c).

So far, so good for Puente as all three levels of his state court post-conviction filings (the trial court, the Illinois Appellate Court, and the Illinois Supreme Court), construed generously, appear to contain Claim 2(a) in at least a cursory form. The problem is that Puente prevailed before the Illinois Supreme Court, which remanded his case to the Illinois Appellate Court and directed that court to appoint counsel. Vacatur restores the status quo as though a judgment was never entered. *People v. Izquierdo-Flores*, 854 N.E.2d at 1164. Thus, to avoid default, Claim 2(a) must appear in Puente's appellate brief following the Illinois Supreme Court's vacatur and remand, as well as his petition for leave to appeal the second denial of appellate relief to the Illinois Supreme Court. *See id*.

Puente concedes that he did not raise this claim in his appellate brief on remand. Memo. in Support of Amended Pet. at 98; Reply at 33. He claims his default should be excused because his appellate counsel for his second appeal was ineffective for failing to raise it, but as discussed above, a claim of ineffective assistance as cause for default is itself procedurally defaulted and no exceptions to procedural default are applicable. Thus, Claim 2(a) is denied.

## 2. Denial of Puente's Request for an Involuntary Manslaughter Instruction – Claim 2(b)

Puente argues that the trial court erred when it denied his motion for an involuntary manslaughter instruction because the testimony that the trial court relied on in making this decision (bar patron Morales' testimony about the shooting) was either not credible or was

consistent with Puente's statement to the police and thus showed he lacked the intent to commit first degree murder. Memo. in Support of Amended Pet. at 99-104. His lengthy memoranda, Dkt. 39 and 53, do not identify the constitutional basis of this claim. A habeas petitioner must point to authority demonstrating that the state court's ruling was "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Crockett v. Hulick*, 542 F.3d 1183, 1190 (7th Cir. 2008). Thus, this claim is deficient on its face. *See Eddmonds v. Martin*, No. 11 C 8627, 2012 WL 3096700, at *10 (N.D. Ill. Jul. 30, 2012) (rejecting claim where the petitioner failed to cite to clearly established federal law or "even identify the constitutional basis of his claim").

In any event, Claim 2(b) is procedurally defaulted. Puente concedes he raised this claim on direct appeal before the trial court and the Illinois Supreme Court, but did not include this claim in his brief filed with the Illinois Appellate Court on direct appeal. Once again, he asserts that his default should be excused because his appellate counsel was ineffective for failing to raise this claim on direct appeal and that he is entitled to relief based on the fundamental miscarriage of justice exception to procedural default. As discussed elsewhere in this opinion, the court disagrees, so Claim 2(b) is denied.

### 3. The Length of Puente's Sentence – Claim 2(c)

Puente asserts that when he was sentenced the sentencing range in effect at the time was twenty to sixty years and that given his personal characteristics and potential for rehabilitation, the trial court should have been more lenient when sentencing him. Memo. in Support of Amended Pet. at 104-08. According to Puente, his sentence violates the Eighth Amendment because it is cruel and unusual, and is "inconsistent with rudimentary demands of fundamental

fairness." *Id.* at 107. The respondent contends that, to the extent Puente's sentencing claim is based on federal law, it is procedurally defaulted because Puente relied exclusively on state law in his state court proceedings.

In Puente's direct appeal brief, filed with the assistance of appointed counsel, he presented a single issue for review:

> At the age of forty-one, Raul Puente had long been a responsible member of society – steadily employed and supporting his family – and had no prior criminal record. Does the forty-year sentence for murder represent an abuse of discretion because it fails to reflect Puente's rehabilitative potential?

Resp. Ex. O at 2. The brief then discusses factors relevant to whether the trial court properly exercised its discretion when sentencing him. It does not mention or allude to the Eighth Amendment or federal constitutional principles in any way. Puente's pro se petition for leave to appeal to the Illinois Supreme Court contained the exact same version of Puente's excessive sentence claim, as Puente raised his excessive sentence claim by attaching an excerpt from the argument section of his appellate brief.

To the extent that Puente is arguing that the state court erred when imposing sentence, his sentencing claim is not cognizable in a federal habeas proceeding because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 131 S.Ct. 13 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *see also* 28 U.S.C. § 2254(a) (a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Puente's sentencing claim also fails as he cannot establish that his sentence exceeded the sentencing range of a valid state statute or the trial court lacked jurisdiction to sentence him. *See Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994).

Moreover, as noted by the respondent, the Eighth Amendment claim raised in Puente's federal filings is procedurally defaulted under the doctrine of full and fair presentment because Puente "did not cast his sentencing claim in federal constitutional terms through one complete round of state review." *See Stevenson v. Gaetz*, No. 11 C 4394, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013). Puente attempts to avoid default by noting that on direct appeal, the Illinois Appellate Court cited *People v. La Pointe*, 88 Ill.2d 482 (Ill. 1981), when rejecting his sentencing claim. Resp. Ex. A at 5. He argues that the state court understood he was raising a federal constitutional claim because "*LaPointe* is a case of Constitutional dimension in that it considers the Constitutional guarantees of due process and equal protection in connection with a sentence claimed by the defendant to be excessive." Reply at 36.

Puente's reliance on the Illinois Appellate Court's citation to *LaPointe*, however, is unconvincing. *LaPointe* discusses the due process clause in the context of addressing what evidence may be considered by the trial court when imposing sentence, *La Pointe*, 88 Ill.2d at 495-98, and whether a state statute authorizing natural life imprisonment violates the due process clause because it is impermissibly vague, *id*. at 499. *LaPointe* also holds that the Illinois statute allowing "[a] sentence of natural life imprisonment for the class of murderers who have demonstrated by their conduct their capacity for particularly brutal and heinous crimes indicative of wanton cruelty" does not violate the equal protection clause. *Id*. at 501.

The excessive sentence claim based on the Eighth Amendment that appears in Puente's § 2254 filings is not based on any of the constitutional theories at issue in *LaPointe*. Similarly, Puente's current cursory due process claim (that his sentence is "inconsistent with rudimentary demands of fundamental fairness," Memo. in Support of Amended Pet. at 107) does not

correspond with the due process issues discussed in *LaPointe*. Moreover, Puente does not point to any specific sections of his state court filings that raise a federal constitutional claim. He cannot do so, as his opening and reply briefs (Resp. Ex. O and Q, respectively) contain a single argument based on state law – given the facts, the trial court abused its discretion when imposing a forty year sentence.

Thus, Puente's excessive sentence claim is defaulted under the doctrine of full and fair presentment. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.") (internal citations omitted); *see also Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652, at *19 (N.D. Ill. Aug. 19, 2013) (reviewing factors relevant to whether a habeas petitioner fairly presented his claim to the state courts ). As with Puente's other claims, the failure of appellate counsel to present the excessive sentence claim in a manner that would preserve it for federal habeas review does not excuse the default of the excessive sentence claim and the fundamental miscarriage of justice exception to procedural default does not apply.

**4.      Screening Under 725 Ill. Comp. Stat. § 5/122-2.1 – Claim 2(d)**

Puente's next claim is that the trial court violated 725 Ill. Comp. Stat. § 5/122-2.1 when it dismissed his pro se state post-conviction petition. Memo. in Support of Amended Pet. at 108-111. Section 122-2.1 provides that the court has ninety days to screen and dismiss a petition seeking post-conviction relief, and after that time passes, the court cannot summarily dismiss the petition and must conduct further proceedings. As with Puente's sentencing claim, the respondent contends that this claim is not cognizable in a federal habeas corpus proceeding because it is based on an alleged violation of state law. The respondent also asserts that, in any

event, the claim is procedurally defaulted because it only appears in Puente's post-conviction petition for leave to appeal to the Illinois Supreme Court.

In response, Puente asserts that he is not seeking habeas relief based on the alleged violation of § 122-2.1. Memo. in Support of Amended Pet. at 110. He contends, instead, that "[a] federal constitutional violation may arise from the violation of requirements of a state statute" and that his:

> argument is that, by virtue of the trial court's dismissal of his Petition beyond the mandated 90-day cut off for doing so without the appointment of counsel, he was denied the assistance of counsel in violation of the Sixth Amendment. Additionally, he was denied equal protection of the law by virtue of being denied counsel when, presumably, other similarly situated defendants were being provided with counsel, in violation of the Fourteenth Amendment.

*Id*. at 110. Puente's analysis of this issue is a single sentence: "[u]nder the totality of circumstances of the case, including for the reasons discussed above, [Puente] submits that law and justice require that this Court grant habeas relief on this claim, pursuant to 28 U.S.C. 2243." *Id*. at 111. Cursory arguments that do not discuss pertinent legal authority are waived. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

Moreover, Puente's attempt to transform his § 122-2.1 claim into an ineffective assistance of counsel claim is incontrovertibly defaulted. As discussed above, the Illinois Supreme Court vacated the Illinois Appellate Court's judgment denying post-conviction relief and remanded for further proceedings before the Illinois Appellate Court. After the Illinois Appellate Court ruled against Puente for the second time, Puente filed a second petition for leave to appeal with the Illinois Supreme Court. In his second petition for leave to appeal, Puente argued that the Illinois Supreme Court should have remanded his case to the trial court (not the appellate court) and directed the trial court to appoint counsel. Resp. Ex. M at 17.

Read broadly, it is possible to construe this argument as a claim that Puente was denied

counsel during his initial state post-conviction proceedings.  However, this argument does not

appear in his counseled appellate brief.  See Resp. Ex. K. Thus, it is procedurally defaulted.  *See*

*Castille*, 489 U.S. at 349 (failure to present claim to state intermediate court means it is

procedurally barred).  Yet again, cause and prejudice and the fundamental miscarriage of justice

exceptions to default are inapplicable, as discussed elsewhere in this opinion.  Thus, Claim 2(d)

is denied.

### 5. Cumulative Effect of Trial Court Errors – Claim 2(e)

Claim 2(e) provides, in full, that:

> The Court should grant [Puente's] request for habeas relief on the basis of each of
> the above trial errors, but also, because of the cumulative effects of those errors,
> which denied his rights to due process and a fair trial.  *Donnelly v. DeChristoforo*,
> 416 U.S. 637, 643 (1974); *Thomas v. Hubbard*, 273 F.3d 1164 (9th Cir. 2001)
> (cumulative effect of trial errors produced trial so infected with unfairness as to
> make the resulting conviction a denial of due process).

Memo. in Support of Amended Pet. at 111.  Puente's reply does not shed any further light on this

argument as it is similarly terse.  Reply at 37.

The Seventh Circuit has held that:

> [T]he Constitution entitles the petitioner to a fair trial, not a perfect one.  And
> courts must be careful not to magnify the significance of errors which had little
> importance in the trial setting.  This requires an examination of the entire record,
> paying particular attention to the nature and number of alleged errors committed;
> their interrelationship, if any, and their combined effect; how the trial court dealt
> with the errors, including the efficacy of any remedial measures; and the strength
> of the prosecution's case.

*Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000).  Puente's filings do not mention, let alone

discuss, this standard or any of the factors identified by the Seventh Circuit.  The court declines

to construct arguments for Puente, who had ample opportunity to flesh out a cumulative error

claim based on the trial court's rulings.  *See* Dkt. 39 (117-page memorandum in support of

Puente's amended habeas petition); Dkt. 53 (Puente's 41-page reply memorandum).  Claim 2(e)

is waived.  *See Mahaffey v. Ramos*, 588 F.3d at 1146.

## C.    Ineffective Assistance of Appellate Counsel (Claim 3)

Puente's final group of claims center on the performance of appellate counsel on direct

appeal.  Specifically, in Claim 3(a), Puente takes issue with counsel's decision to raise a single

issue:  that Puente's sentence was excessive.[16]

In Puente's post-conviction proceedings, the Illinois Appellate Court accurately

summarized the two factors used to evaluate ineffective assistance claims under *Strickland*.

Resp. Ex. L at 13.  It also observed that "[e]ffective assistance of counsel does not mandate that

appellate counsel raise every conceivable argument . . . . [so] appellate counsel is not

constitutionally deficient unless patently wrong," and appellate counsel is not ineffective if she

does not raise a meritless claim.  *Id*. at 13-14.  Then, the Illinois Appellate Court found that

Puente had failed to show that appellate counsel's failure to raise the specified issues "was

unreasonable or that his conviction would have been reversed" had the issues been raised.  *Id*. at

14.  In support, the court noted that Puente's pro se state post-conviction petition and counseled

appellate brief both contained conclusory assertions about appellate counsel's performance that

_____

[16] Although Puente's discussion of Claim 3 is difficult to follow, he appears to be contending that his appellate counsel on direct appeal should have raised a host of additional merits and sentencing issues.  Specifically, he states that appellate counsel should have asserted that "the trial court erred in failing to suppress Mr. Puente's statement[,] Det. Perez conducted an improper line-up wherein the State's trial witnesses were led to identify [Puente] as the offender[,]" and that trial counsel was ineffective because he improperly focused on "the plight of [Puente's] family rather than showing sufficient remorse for the victim and his family, which resulted in the imposition of an additional 20 years imprisonment on top of the minimum 20 years authorized by statute for first degree murder."  Memo. in Support of Amended Pet. at 112.

were not supported by "facts, argument, or legal authority." *Id.* It then concluded that Puente's

"failure to make the requisite showing of either deficient performance or sufficient prejudice

defeats his ineffective assistance of appellate counsel claim." *Id.*

Puente's submissions to this court are similarly vague. He argues that "[u]nder the

totality of circumstances of the case, including for the reasons discussed above, [Puente] submits

that law and justice require that this Court grant habeas relief on this claim, pursuant to 28

U.S.C. 2243." Memo. in Support of Amended Pet. at 114. The remainder of his argument

consists of the statement, "In the alternative, if the Court looks to the merits determination of this

claim by the Illinois Appellate Court on direct review, on the same bases [Puente] submits that

this claim should be granted under 28 U.S.C. 2254(d) because the appellate court's ruling was a

decision both (a) contrary to or an unreasonable application of clearly established Federal law

and (b) based on an unreasonable application of the facts, thereunder."

Setting aside the conclusory nature of Puente's statements about ineffective assistance of

appellate counsel on direct appeal, his argument makes no sense. The Illinois Appellate Court

rejected Puente's ineffective assistance of appellate counsel claim based on his failure to raise

his ineffective assistance claim with the detail required by state procedural law. As discussed

above, when a state court declines to address the merits of a habeas petitioner's federal claim

based on a failure to comply with a state procedural rule, the state court's decision rests on

independent and adequate state procedural ground and the issue is procedurally defaulted for

purposes of federal habeas review. *See Woods*, 589 F.3d at 376 (a state post-conviction court's

finding of waiver is an independent and adequate state ground).

Puente does not attempt to explain how the Illinois Appellate Court's procedural ruling based on its finding of waiver was contrary to or an unreasonable application of clearly established federal law or an unreasonable application of the law to the facts. He does not identify a Supreme Court case that prohibits a state court from finding that an unsupported argument is waived. He does not provide an evidentiary basis to disprove the state court's finding of waiver. At best, he remarks in passing that if his claim is defaulted, the default should be excused based on actual innocence. That contention is unavailing, as discussed elsewhere in this opinion. In sum, Claim 3(a) is denied.

In Claim 3(b), Puente very briefly argues that the cumulative effect of appellate counsel's delicts violated his right to effective assistance of appellate counsel on direct appeal. Memo. in Support of Amended Pet. at 115, Reply at 38. Although Puente does not cite to any authority in support, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States ex rel. Logan v. Chandler*, — F. Supp. 2d —, No. 12 C 6170, 2013 WL 6152236, at *33 (N.D. Ill. Nov. 21, 2013) (quoting *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (internal quotation marks omitted)).

In his state post-conviction proceedings, Puente argued that his appellate counsel was ineffective because he did not challenge certain aspects of trial counsel's performance. Resp. Ex. K. Puente did not, however, assert that appellate counsel was ineffective because he failed to argue that the cumulative effect of these alleged errors prevented him from receiving a fair trial. The court need not consider whether the cumulative error claim appears in Puente's post-conviction petition or petition for leave to appeal to the Illinois Supreme Court as it

unquestionably is not in Puente's appellate brief. Thus, the cumulative error theory is procedurally defaulted as Puente did not present it through one complete round of state court review and as discussed above, no exception to procedural default applies.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

The court found that Claim 1(a) (ineffective assistance of counsel based on the failure to move to suppress evidence relating to an allegedly suggestive line-up and photo array) was procedurally defaulted and that the cause and prejudice and fundamental miscarriage of justice exceptions to procedural default did not excuse Puente's default. Because they were focusing on issues related to procedural default, the parties did not brief the merits of Claim 1(a). However,

based on Puente's characterization of the line-up and the photo array, Claim 1(a) is sufficiently substantial to justify a certificate of appealability. *See Gonzalez v. Thaler*, 132 S.Ct. 641, 649 (2012). The court further finds that its interpretation of the "new evidence" requirement for procedural innocence in *Gomez* is adequate to entitle Puente to proceed further on his claim that actual innocence excuses his default. *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000). Thus, the court grants a certificate of appealability as to these two issues. As to Puente's remaining array of claims, the court finds that Puente has not made a substantial showing of the denial of a constitutional right because he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional right that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000).

## V. CONCLUSION

For the above reasons, petitioner Raul Puente's request for a writ of habeas corpus under 28 U.S.C. § 2254 is denied. The court certifies the following two issues for appeal pursuant to 28 U.S.C. § 2253(c):

1.  Claim 1(a) is a procedurally defaulted ineffective assistance of trial counsel claim based on the failure to file a motion to suppress an allegedly suggestive line-up and photo array. Puente contends that evidence known to him at the time of his state court trial (that he was at the El Saloon and shot Rodriguez accidentally or in self-defense) demonstrates procedural innocence. Based on this evidence, he argues that the fundamental miscarriage of justice exception to procedural default excuses the default of Claim 1(a). Can Puente use this so-called "new" evidence to excuse his default when he chose – with the assistance of constitutionally adequate counsel – not to present it during his trial?

2.  If the procedural default of Claim 1(a) is excused and the court can reach the merits, did trial counsel's failure to file a motion to suppress the allegedly

suggestive line-up and photo array violate Puente's Sixth Amendment right to the effective assistance of counsel?

The court declines to certify any additional issues for appeal.  The clerk is directed to enter a Rule 58 judgment terminating this case.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge


DATED:   April 1, 2014